511 S.E.2d 117

**Tim MUMAW, Administrator for the Estate of Edward Mumaw, Deceased, Plaintiff Below, Appellant,**

v.

**U.S. SILICA COMPANY, a Corporation, Defendant Below, Appellee.**

No. 25169.

Supreme Court of Appeals of West Virginia.

Submitted Oct. 7, 1998.

Decided Dec. 4, 1998.

David M. Hammer, Hammer, Ferretti & Schiavoni, Harry P. Waddell, Wilkes & Waddell, Martinsburg, West Virginia, Attorneys for the Appellant.

Gary W. Hart, Mychal S. Schulz, Jackson & Kelly, Charleston, West Virginia, Attorneys for the Appellee.

## PER CURIAM:

This is an appeal by Deborah Saunders, guardian, and Tim Mumaw, administrator for the estate of Edward Mumaw, deceased,[1] plaintiffs below/appellants (hereinafter collectively referred to as Administrator Mumaw), from an adverse summary judgment ruling by the Circuit Court of Morgan County. This action was filed against U.S. Silica Company, Inc., defendant below/appellee (hereinafter U.S. Silica), by Ms. Saunders and Mr. Edward Mumaw after Edward was injured during his employment with U.S. Silica. On appeal, Administrator Mumaw contends genuine and material issues of fact existed in the case, which precluded summary judgment. For the reasons set forth below, we affirm the Circuit Court of Morgan County.

## I.

### FACTUAL BACKGROUND

Edward Mumaw (hereinafter Mr. Mumaw) was an employee of U.S. Silica. On Saturday, August 6, 1994, Mr. Mumaw and two co-workers, James Peck and Dennis Somers, were scheduled to work during the morning hours at U.S. Silica's Berkeley Springs facility. The three employees came to work on that date specifically for the purpose of in-

---

1. Edward Mumaw died two days after the circuit court granted summary judgment to U.S. Silica. Tim Mumaw was then substituted as a party for Edward Mumaw as administrator for his estate.

stalling an "Alpine machine". The circuit court's order indicates that the Alpine machine weighed approximately 3,600 pounds.

The Alpine machine had to be lifted to the second floor from its position on the first floor of the facility. The ceiling on the first floor had a trapdoor cut into it for the purpose of hoisting the Alpine machine through the ceiling and onto the second floor. Mr. Mumaw and his two co-workers successfully pulled the Alpine machine through the trapdoor and onto the second floor. Once on the second floor, the Alpine machine had to be mounted and installed on a pedestal that was located a few feet from the trapdoor. Mr. Mumaw worked between the Alpine machine and the trapdoor. While using a crowbar to align a hole on the Alpine machine with a hole in the pedestal, Mr. Mumaw fell backwards through the trapdoor and landed on his head on the first floor. The fall was approximately eleven feet. Mr. Mumaw sustained serious head injuries which ultimately resulted in his death.

On July 26, 1996, the instant action was filed on behalf of Mr. Mumaw. The complaint alleged a deliberate intention cause of action against U.S. Silica pursuant to W.Va. Code § 23–4–2(c)(2)(ii) (1994). After the completion of discovery, U.S. Silica moved for summary judgment. On September 9, 1997, the circuit court entered an order granting summary judgment to U.S. Silica.

## II.

### STANDARD OF REVIEW

■ The standard of appellate review of a circuit court's entry of summary judgment is de novo. Syl. pt. 1, *Painter v. Peavy*, 192 W.Va. 189, 451 S.E.2d 755 (1994). This Court has held that "[a] motion for summary judgment should be granted only when it is clear that there is no genuine issue of fact to be tried and inquiry concerning the facts is not desirable to clarify the application of the law." Syl. pt. 3, *Aetna Casualty & Surety Co. v. Federal Ins. Co. of New York,* 148 W.Va. 160, 133 S.E.2d 770 (1963). "Summary judgment is appropriate where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party,

such as where the nonmoving party has failed to make a sufficient showing on an essential element of the case that it has the burden to prove." Syl. pt. 4, *Painter,* 192 W.Va. 189, 451 S.E.2d 755.

## III.

### DISCUSSION

### A. On a Motion for Summary Judgment, a Plaintiff Must Satisfy All Five Elements of W.Va.Code § 23–4–2(c)(2)(ii)

Mr. Mumaw, through his representatives, has alleged a cause of action against his employer under W.Va.Code § 2 3–4–2(c)(2)(ii)(1994). To establish liability against an employer pursuant to W.Va.Code § 23–4–2(c)(2)(ii), a plaintiff must prove the following:

(A) That a specific unsafe working condition existed in the workplace which presented a high degree of risk and a strong probability of serious injury or death;

(B) That the employer had a subjective realization and an appreciation of the existence of such specific unsafe working condition and of the high degree of risk and the strong probability of serious injury or death presented by such specific unsafe working condition;

(C) That such specific unsafe working condition was a violation of a state or federal safety statute, rule or regulation, whether cited or not, or of a commonly accepted and well-known safety standard within the industry or business of such employer, which statute, rule, regulation or standard was specifically applicable to the particular work and working condition involved, as contrasted with a statute, rule, regulation or standard generally requiring safe workplaces, equipment or working conditions;

(D) That notwithstanding the existence of the facts set forth in subparagraphs (A) through (C) hereof, such employer nevertheless thereafter exposed an employee to such specific unsafe working condition intentionally; and

(E) That such employee so exposed suffered serious injury or death as a direct

and proximate result of such specific unsafe working condition.

In the instant proceeding, the circuit court's summary judgment order found that no genuine issue of material fact was in dispute as to factors A, B, D, and E. The circuit court's order was silent on factor C. Therefore, this Court must presume for summary judgment purposes that the circuit court found in favor of Administrator Mumaw regarding factor C.[2] *See Williams v. Precision Coil, Inc.*, 194 W.Va. 52, 59–60, 459 S.E.2d 329, 336–337 (1995) ("all inferences are viewed in the light most favorable to the nonmoving party"). On appeal to this Court, Administrator Mumaw contends that the circuit court's award of summary judgment to U.S. Silica should be reversed solely on the basis that a genuine issue of material fact was in dispute regarding factor C.

Our prior cases construing W.Va.Code § 23–4–2(c)(2)(ii) have always required the plaintiff to establish *each* of the statute's five factors. *See Blake v. John Skidmore Truck Stop, Inc.*, 201 W.Va. 126, 134, 493 S.E.2d 887, 895 (1997) (involving directed verdict); *Goodwin v. Hale*, 198 W.Va. 554, 482 S.E.2d 171 (1996) (reversing plaintiff's jury verdict and awarding new trial); *Gallapoo v. Wal-Mart Stores, Inc.*, 197 W.Va. 172, 475 S.E.2d 172 (1996) (involving certified question); *Sias v. W–P Coal Co.*, 185 W.Va. 569, 408 S.E.2d 321 (1991) (reinstating jury verdict for plaintiffs); *Blevins v. Beckley Magnetite, Inc.*, 185 W.Va. 633, 408 S.E.2d 385 (1991) (affirming lower court's order which set aside plaintiff's jury verdict and granted judgment as a matter of law for defendant); *Helmick v. Potomac Edison Co.*, 185 W.Va. 269, 406 S.E.2d 700 (1991) (affirming jury verdict for plain-

tiff); *Mayles v.. Shoney's, Inc.*, 185 W.Va. 88, 405 S.E.2d 15 (1990) (affirming jury verdict for plaintiff). Thus, in order to withstand a motion for summary judgment, a plaintiff must make a prima facie showing of dispute on each of the five factors. *See Bell v. Vecellio & Grogan, Inc.*, 197 W.Va. 138, 475 S.E.2d 138 (1996) (reversing summary judgment holding that plaintiff was not covered by statute because injury occurred while he was working outside the state).

The purpose of these five factors is to show "deliberate intention" on the part of the employer. W.Va.Code § 23–4–2–(c)(2). In syllabus point 2 of *Mayles v. Shoney's, Inc.*, 185 W.Va. 88, 405 S.E.2d 15 (1990), this Court ruled that "[a] plaintiff may establish 'deliberate intention' in a civil action against an employer for a work related injury by offering evidence to prove the five specific requirements provided in W.Va.Code § 23–4–2(c)(2)(ii) [1994]." *Accord*, Syl. pt. 4, *Blake v. John Skidmore Truck Stop, Inc.*, 201 W.Va. 126, 493 S.E.2d 887 (1997); Syl. pt. 2, *Helmick v. Potomac Edison Co.*, 185 W.Va. 269, 406 S.E.2d 700 (1991).

Furthermore, the five factors set fourth in W.Va.Code § 23–4–2(c)(2)(ii) must be read in conjunction with W.Va.Code § 23–4–2(c)(2)(iii)(B) which provides, in part, that in cases alleging liability under W.Va.Code § 23–4–2(c)(2)(ii), "the court shall dismiss the action upon motion for summary judgment if it finds ... that one or more of the facts required to be proved by the provisions of subparagraphs (A) through (E) ... do not exist[.]"[3] The language of W.Va.Code § 23–4–2(c)(2)(iii)(B) is clear and unambiguous. We stated recently in syllabus point 4 of *McGraw v. St. Joseph's Hospital*, 200 W.Va.

---

2. After the accident, U.S. Silica was given a citation by federal regulators that required U.S. Silica to post a sign stating that the trapdoor should be kept closed.

3. W.Va.Code § 23–4–2(c)(2)(iii)(B) reads in full:
   Notwithstanding any other provision of law or rule to the contrary, and consistent with the legislative findings of intent to promote prompt judicial resolution of issues of immunity from litigation under this chapter, the court *shall dismiss the action upon motion for summary judgment if it finds, pursuant to Rule 56 of the Rules of Civil Procedure that one or more of the facts required to be proved by the provisions of*

*subparagraphs (A) through (E) of the preceding paragraph (ii) do not exist,* and the court shall dismiss the action upon a timely motion for a directed verdict against the plaintiff if after considering all the evidence and every inference legitimately and reasonably raised thereby most favorably to the plaintiff, the court determines that there is not sufficient evidence to find each and every one of the facts required to be proven by the provisions of subparagraphs (A) through (E) of the preceding paragraph (ii)[.]
(Emphasis added).

114, 488 S.E.2d 389 (1997), that " ' " '[w]hen a statute is clear and unambiguous and the legislative intent is plain the statute should not be interpreted by the courts, and in such a case it is the duty of the courts not to construe but to apply the statute. Point 1, syllabus, *State ex rel. Fox v. Board of Trustees of the Policemen's Pension or Relief Fund of the City of Bluefield, et al.*, 148 W.Va. 369[ 135 S.E.2d 262 (1964) ].' Syllabus Point 1, *State ex rel. Board of Trustees v. City of Bluefield*, 153 W.Va. 210, 168 S.E.2d 525 (1969)." Syl. pt. 3, *Central West Virginia Refuse, Inc. v. Public Service Com'n of West Virginia*, 190 W.Va. 416, 438 S.E.2d 596 (1993).' Syl. Pt. 2, *Keen v. Maxey*, 193 W.Va. 423, 456 S.E.2d 550 (1995)."

This Court's decision in *Helmick v. Potomac Edison Co.*, 185 W.Va. 269, 406 S.E.2d 700 (1991), illustrates our Court's application of the unambiguous language of W.Va.Code § 23–4–2(c)(2)(iii)(B). In *Helmick*, two employers were named as defendants by the plaintiff. One of the employers, Potomac Edison, filed a crossclaim against the other employer under W.Va.Code § 23–4–2(c)(2)(ii). The plaintiff's claim and Potomac Edison's crossclaim went to trial. At the close of the evidence on Potomac Edison's crossclaim, the trial court invoked the directed verdict clause of W.Va.Code § 23–4–2(c)(2)(iii)(B) in order to direct a verdict against Potomac Edison on its crossclaim.[4] This Court affirmed the directed verdict and noted that "Potomac Edison did not meet at least three of the elements required by [W.Va.Code § 23–4–2(c)(2)(ii) ], to show 'deliberate intention.' " *Helmick*, 185 W.Va. at 274–275, 406 S.E.2d at 705–706. Although *Helmick* involved the directed verdict clause of W.Va.Code § 23–4–2(c)(2)(iii)(B), the decision is nevertheless instructive as to this Court's understanding of the legislative intent regarding the statute. *Helmick* concluded, in essence, that at the directed verdict stage all five elements of W.Va.Code § 23–4–2(c)(2)(ii) must be met before the evidence is sufficient for jury determination.

This Court has also discussed the relationship of the motion for summary judgment clause and the motion for directed verdict clause contained in W.Va.Code § 23–4–2(c)(2)(iii)(B). *Sias v. W–P Coal Co.*, 185 W.Va. 569, 408 S.E.2d 321 (1991). In *Sias*, we held that "such motions are to be granted when, pursuant to Rule 56(c) of the West Virginia Rules of Civil Procedure, one or more of the five elements of W.Va.Code § 23–4–2(c)(2)(ii)(A)–(E) [1994] *do not exist* (motion for summary judgment) or when, after considering all of the evidence and every reasonable inference in the light most favorable to the plaintiff, there is insufficient evidence to find each and every one of the aforestated five elements (motion for a directed verdict)." *Sias* at 576, 408 S.E.2d at 328. (Emphasis added).

With respect to the impact of W.Va.Code § 23–4–2(c)(2)(iii)(B) on the procedural aspects of summary judgment, directed verdict and judgment not withstanding the verdict, we held in syllabus point 3 of *Sias* that:

The portion of the statute which authorizes "prompt judicial resolution" of "deliberate intention" actions against employers, specifically, W.Va.Code § 23–4–2(c)(2)(iii)(B) [1994], relates to plaintiffs' more specific substantive law burden under the five-element test of W.Va.Code § 23–4–2(c)(2)(ii)(A)–(E) [1994], but the preexisting procedural law still applies for granting employers' motions for summary judgment, directed verdict and judgment notwithstanding the verdict.

185 W.Va. 569, 408 S.E.2d 321.

*Sias* clearly states that preexisting procedural law governs the granting of employers' dispositive motions under W.Va. Code § 23–4–2(c)(2)(ii). By so ruling, this Court has mandated that all five factors must be met for a plaintiff to defeat a dispositive motion filed by a defendant. The intent of *Sias* was to hold that the five factors under W.Va.Code § 23–4–2(c)(2)(ii) had to be interpreted under the preexisting legal principles for a particular dispositive motion. This means, for example, that a summary judg-

---

4. As a result of amendments to the West Virginia Rules of Civil Procedure in 1998, the legal phrase "directed verdict" has been replaced under Rule 50 by the phrase "judgment as a matter of law."

ment motion made by an employer is appropriate "where the nonmoving party has failed to make a sufficient showing on an essential element of the case that it has the burden to prove." Syl. pt. 2, in part, *Williams v. Precision Coil, Inc.*, 194 W.Va. 52, 459 S.E.2d 329 (1995). Each of the five factors under W.Va. Code § 23–4–2(c)(2)(ii) is an essential element of a "deliberate intention" cause of action, which a plaintiff has the ultimate burden to prove. Therefore, at the summary judgment stage, if a defendant should establish that no material issue of fact is in dispute on any one of the five factors, and such a finding is in favor of the defendant,[5] summary judgment must be granted to the defendant.

■ This proposition is not new. We noted in *Blake,* 201 W.Va. at 134, 493 S.E.2d at 895, that "[t]o avoid having a case dismissed, there must be 'sufficient evidence to find each and every one of the facts required to be proven' under the five-part test of West Virginia Code § 23–4–2(c)(2)(ii)."(Citation omitted). Moreover, we crystallized this proposition in syllabus point 2 of *Helmick,* wherein we held that "[t]o establish 'deliberate intention' in an action under [W.Va.] Code § 23–4–2(c)(2)(ii), a plaintiff or cross-claimant must offer evidence to prove each of the five specific statutory requirements." 185 W.Va. 269, 406 S.E.2d 700.

In the instant proceeding, Administrator Mumaw contends that the circuit court's grant of summary judgment to U.S. Silica should be reversed solely on the basis that a genuine issue of material fact was in dispute regarding factor C. In view of our longstanding law on summary judgment and our past decisions involving W.Va.Code § 23–4–2(c)(2)(ii), we find this argument to be without merit. However, because the lower court's silence as to factor C compels the presumption that the factor was resolved in favor of Administrator Mumaw, we must therefore proceed to a determination of whether the circuit court was correct in finding no material issue of fact was in dispute

regarding the remaining four factors of W.Va.Code § 23–4–2(c)(2)(ii).

**B. The Circuit Court Correctly Found that No Material Issue of Fact was in Dispute Regarding Factors A, B, D and E Of W.Va.Code § 23–4–2(c)(2)(ii)**

■ **1. Specific Unsafe Working Condition.** To sustain a cause of action under W.Va.Code § 23–4–2(c)(2)(ii), past a motion for summary judgment requires pursuant to W.Va.Code § 23–4–2(c)(2)(ii)(A), that a material issue of fact be in dispute as to whether "a specific unsafe working condition existed in the workplace which presented a high degree of risk and a strong probability of serious injury or death." In the matter *sub judice,* the circuit court found that the only unsafe working condition to which Mr. Mumaw was exposed was created by him. The unsafe working condition was his failure to close the trapdoor. The record supports the lower court's finding. There was evidence that Mr. Mumaw was told three times by his co-worker James Peck to close the trapdoor while aligning the Alpine machine. The record contained no evidence to suggest that U.S. Silica created the situation causing the trapdoor to remain open while Mr. Mumaw and his co-workers aligned the Alpine machine. Moreover, there was no evidence that U.S. Silica instructed Mr. Mumaw or any worker to leave the trapdoor open once the Alpine machine was hoisted through it. In fact, the evidence presented below indicated that U.S. Silica believed its workers closed the trapdoor while aligning the Alpine machine.

Next, Administrator Mumaw contends that U.S. Silica knew that relocating the Alpine machine presented a fall hazard. U.S. Silica's employees regularly received hazard fall training. Additionally, employees were given safety-harnesses.[6] Notwithstanding Administrator Mumaw's efforts to take deposition testimony out of context, all of the evidence clearly proved that U.S. Silica's method of moving the Alpine machine was safe. In

---

5. Obviously, a material issue of fact may not be in dispute on a factor, but the undisputed factor may be favorable to the plaintiff employee.

6. However, because of the small working space in which the Alpine machine was mounted, it was not practical to use safety-harnesses during the mounting process.

fact, U.S. Silica began using this method in 1991 because workers complained that an old method was unsafe and exposed them to risk of injury. Had Mr. Mumaw done what was expected of him by closing the trapdoor, he would not have fallen.

Moreover, the situation herein presented is similar to the facts and our decision in *Blevins v. Beckley Magnetite, Inc.*, 185 W.Va. 633, 408 S.E.2d 385 (1991). In *Blevins*, an employee's left hand and arm were crushed while he was cleaning out a conveyor tail pulley. The employee alleged that the method of cleaning out the conveyor tail pulley presented a specific unsafe working condition. We rejected this argument upon finding that "[a] specific unsafe working condition ... only existed when the [employee] went into the guarded area, without first turning off the equipment, to clean up the ore spillage, failing to comply with safety procedures." *Blevins*, 185 W.Va. at 639, 408 S.E.2d at 391. We further held in *Blevins* that where an employee creates a specific unsafe working condition by not following expected procedures, a deliberate intention action cannot be maintained against the employer. In the instant proceeding, Mr. Mumaw had a duty to close the trapdoor. However, Mr. Mumaw failed to close the trapdoor, even after being instructed three times to do so by a co-worker. U.S. Silica did not create the specific unsafe working condition that presented a high degree of risk and a strong probability of serious injury or death—Mr. Mumaw created the situation. Based upon our decision in *Blevins*, Administrator Mumaw cannot sustain his burden under W.Va.Code § 23–4–2(c)(ii)(A).

■ **2. Specific Realization.** To sustain a cause of action under W.Va.Code § 23–4–2(c)(2)(ii), past the summary judgment stage, it is also required under W.Va.Code § 23–4–2(c)(2)(ii)(B), that a material issue of fact be in dispute as to whether "[t]he employer had a subjective realization and an appreciation of the existence of such specific unsafe working condition and of the high degree of risk and the strong probability of serious injury or death presented by such specific unsafe working condition." The trial court found that there was no evidence showing that U.S.

Silica knew its workers failed to shut the trapdoor while placing the Alpine machine on the pedestal. This Court has previously addressed evidence necessary to impute knowledge of a specific unsafe working condition to an employer. In syllabus point 3 of *Blevins* this Court held:

> Given the statutory framework of W.Va. Code §§ 23–4–2(c)(2)(i) and (ii) [1994] which equates proof of the five requirements listed in W.Va.Code § 23–4–2(c)(2)(ii) with deliberate intention, a plaintiff attempting to impose liability on the employer must present sufficient evidence, especially with regard to the requirement that the employer had a subjective realization and an appreciation of the existence of such specific unsafe working condition and the strong probability of serious injury or death presented by such specific unsafe working condition. This requirement is not satisfied merely by evidence that the employer reasonably should have known of the specific unsafe working condition and of the strong probability of serious injury or death presented by that condition. Instead, it must be shown that the employer actually possessed such knowledge.

185 W.Va. 633, 408 S.E.2d 385.

The standard established by *Blevins* to satisfy W.Va.Code § 23–4–2(c)(2)(ii)(B) is "actual" knowledge. This is a high threshold that cannot be successfully met by speculation or conjecture. In the case *sub judice*, there was conflicting testimony between two employees as to whether some employees had worked in the past with the trapdoor open while placing the Alpine machine on the pedestal. However, the evidence was consistent insofar as showing U.S. Silica believed all workers closed the trapdoor before aligning the Alpine machine. Furthermore, no evidence was presented that any employee had previously complained that the trapdoor was not being closed or that the trapdoor presented a safety hazard in and of itself. Prior to Mr. Mumaw's fall, no government regulatory agency had cited or warned U.S. Silica that the method used to hoist and mount the Alpine machine created a safety

hazard.[7] Thus, we see no reason to disturb the trial court's finding on the issue. There was simply no evidence showing U.S. Silica had a subjective realization and an appreciation of the existence of a specific unsafe working condition and of the high degree of risk and the strong probability of serious injury or death presented by such specific unsafe working condition. Therefore, Administrator Mumaw did not sustain his burden under W.Va.Code § 23-4-2(c)(ii)(B).

[redacted] 3. **Intentional Exposure.** Finally, to sustain a cause of action under W.Va.Code § 23-4-2(c)(2)(ii), beyond the summary judgment stage, it is required under W.Va.Code § 23-4-2(c)(2)(ii)(D), that a material issue of fact be in dispute as to whether the employer "exposed an employee to such specific unsafe working condition intentionally." The circuit court found that there was no evidence showing that U.S. Silica intentionally exposed Mr. Mumaw to unsafe working conditions. In *Sias,* 185 W.Va. at 575, 408 S.E.2d at 327, this Court held that "this element, which is linked particularly with the subjective realization element, is not satisfied if the exposure of the employee to the condition was inadvertent or merely negligent." No evidence was presented before the trial court that U.S. Silica intentionally[8] exposed Mr. Mumaw to unsafe working conditions. Furthermore, in order for U.S. Silica to intentionally expose Mr. Mumaw to an unsafe working condition, there must have been an actual unsafe working condition. Having previously concluded that no evidence was presented to draw into dispute the issue of an unsafe working condition, it is therefore axiomatic that U.S. Silica could not intentionally expose Mr. Mumaw to something that did not exist.[9]

## IV.

## CONCLUSION

The circuit court's ruling granting summary judgment to U.S. Silica is affirmed.

Affirmed.

[redacted]

7. After Mr. Mumaw's fall, U.S. Silica was advised by the United States Mine Safety and Health Administration (MSHA) to post a sign indicating the trapdoor had to be closed when not in use. However, the procedure for hoisting and mounting the Alpine machine was not changed. Also, MSHA did not require U.S. Silica's employees to wear safety-harnesses while hoisting and mounting the Alpine machine.

8. While it would have been insufficient to meet Administrator Mumaw's burden of proof on this issue, there was similarly no evidence to prove that U.S. Silica inadvertently or negligently exposed Mr. Mumaw to an unsafe working condition associated with aligning the Alpine machine.

9. Under W.Va.Code § 23-4-2(c)(2)(ii)(E) there must be a showing that the employee suffered serious injury or death as a direct and proximate result of such specific unsafe working condition. The circuit court found that while Mr. Mumaw sustained serious injury, it was not the direct result of an unsafe working condition attributable to U.S. Silica. Thus, this factor is moot unless it is shown that the first four factors presented a dispute as to genuine issues of material fact.